Romualdo García Vera, Plaintiff and Appellee, v. Rosa Ratera, Defendant and Appellant.

No. 4708. Argued March 20, 1929.—Decided February 14, 1930.

F. Soto Gras, for appellant.   E. López Tizol, for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

The district court rendered judgment in favor of plaintiff, a contractor, for five hundred eighty dollars ninety-five cents ($580.95), the amount claimed in the first of three causes of action, and dismissed a counterclaim.

The contract contained the following clause:

"2.—Mr. García will begin the work as soon as this contract is

signed, and will continue without interruption in such a manner as to complete the same within a period of fifty-six days from this date; and if said period expires before completion of the repairs, he shall pay the owner as liquidated damages to be deducted from the amount of the work, the sum of ten dollars ($10.00) a day for every day that may elapse without having finished the repairs."

Within a few days after the work was begun it was suspended for about two weeks by order of the municipal authorities pending an investigation to determine whether a municipal ordinance had been violated. The time within which the work was to have been completed expired on September 26. On September 29, the contractor went to a hospital where, as the result of a serious operation, he was confined for several weeks. While there he was visited by Rosa Ratera, her husband, Isidro Solé and a sister, María Ratera.

The contractor's version of this interview is that his visitors announced that they had come to rescind the contract; that witness declined because he had already put his money into the work and because a rescission would injure his reputation; that his visitors assured him that he would suffer no damage and proposed the naming of two experts, one by them and the other by witness, who would ascertain which of the parties was indebted to the other and determine the amount of such indebtedness; that witness agreed to this, naming **Martínez de León**, and defendant named José A. Canals.

At the close of this conversation García called in Martínez León, who had left the room on the arrival of Isidro Solé with his wife and sister-in-law. At the trial Martínez testified that García then said to him in the presence of the other visitors: "These people wish to rescind a contract and I want you to serve as an expert."

Isidro Solé testified that his wife said to García Vera, "García, thus far I have been very considerate of you to the prejudice of my own interest. You name an appraiser and I will name another so that we may take charge of the work."

The purpose, he explained, was "to ascertain what had been done and in order that we might return the material which did not belong to us." He also stated that nothing was said at the hospital about damages or about money that had been paid to a watchman who was taking care of the unused material.

The first item of the counterclaim was $420 to cover the forty-two days that elapsed from September 26, the date on which the work was to have been completed, and November 8, the date on which the experts estimated the value of the work that had been done, appraised the material on hand, and ascertained the amount paid on account by defendant. The second item was $79.72 paid by defendant to a watchman at the rate of fourteen dollars a week from the date on which García went to the hospital. The third item was one hundred seventy-five dollars alleged to be chargeable to plaintiff because of defects in the flooring of the second story. Defendant in her counterclaim, concedes a credit on this amount, of $55, allowed the contractor by the two experts, thus reducing the amount to $120.

The total amount of the counterclaim exceeded the amount found by the experts to be due the contractor by the sum of $38.77 and defendant prayed for a judgment in her favor for the amount of such difference.

Appellant does not question the amount found by the district judge to be due plaintiff, in accordance with the report of the two experts, but says that the court erred in holding that the contractor was not responsible for the delay of fifteen days due to the order issued by the municipal authorities, and was not liable at the rate of ten dollars a day for each day of such interruption.

By the terms of the contract García was bound to pay ten dollars a day as liquidated damages from the specified date of delivery. The amount of such damages was not to be measured by the duration of any interruption before the expiration of the period within which the work was to be com-

pleted. It was not the intention of the parties that doña Rosa should be compensated at the rate of ten dollars a day for every day that should elapse after the stipulated day of delivery and should receive additional compensation at the same rate for the time lost before the expiration of the period within which the work was to be completed.

Another contention is that the court erred in holding that the contractor was not liable at the rate of ten dollars a day for the twenty-seven days during which he was confined in the hospital.

García says that the contract was rescinded on October 20. No other witness attempts to fix the exact date of the conversation in the hospital. Martínez says that García was convalescent. Solé speaks of a former visit. If the date given by García be correct, twenty-one of the twenty-seven days had elapsed at the time of the oral agreement. Solé admits that nothing was said about damages at the time of that agreement. García says that if there had been any reservation of the right to liquidated damages, he would not have consented to a rescission. The reservation of a right to recover any such damages as had accrued up to the time of the conversation is inconsistent with the statement attributed to doña Rosa by her husband to the effect that the consideration she had already shown García had involved a pecuniary loss. The right to recover liquidated damages for further delay in the completion of the work after the date of the agreement that García should discontinue the same, can not be reconciled with the assurance given him that he would not lose anything through such agreement. Aside from García's testimony it is not probable that he would have consented to an express reservation of a right to compensation at the rate of ten dollars a day until such time as the work should be completed by doña Rosa. All the circumstances tend to exclude the theory of a survival of the right to liquidated damages in accordance with the terms of the original contract.

Under the original agreement, liquidated damages were to accrue at the specified rate until the work was completed by García. The possibility of such completion vanished with the agreement that García should discontinue the work. The difficulty of fixing a new time limit, in the absence of a new agreement, is illustrated by the fact that defendant in her counterclaim seeks to recover damages up to the time of the report made by experts, while the assignment of errors specifies the time during which García was in the hospital. A claim for damages up to the time of filing the counterclaim, upon the theory that such damages would continue to accrue until the work was completed by defendant, would have been equally plausible. The truth is that in the absence of a new agreement, either express or implied, neither of the parties to the original contract could reconstruct in a modified form the original stipulation as to liquidated damages and thereby keep it alive or revive it. Nor could the district court accomplish a like result by attempting to make a third contract for the parties to the two pre-existing agreements.

When doña Rosa told García on October 20, that her indulgence up to that time had involved a financial sacrifice and that he would not lose anything by accepting the compromise proposed by her, she waived any right that she might have had to re-imbursement for money paid to the watchman.

Appellant also insists that the court below erred in not allowing the item of one hundred twenty dollars to cover alleged defects in the flooring of the second story.

The contract provided that upon the completion of a specified portion of the work, including the flooring and partitions of the upper story, the contractor was to receive $475. The plans and specifications called for the replacing of defective boards in the old floor. The old flooring was then to receive a coat of carbolineum and to be covered with tarred paper the outer edges of which were to extend upward for a distance of four inches around the walls so as to make the floor

waterproof. The new flooring was then to be laid cross-wise upon the paper.

The appraisers found that the contractor had performed 88 per cent of this work, and·therefore was entitled to $418.

The next installment, according to the contract was to be $550. The appraisers found that the contractor had performed 90 per cent of the work required, and was entitled to $495.

A receipt signed by the contractor shows that he had received $200 for this portion of the work, and that doña Rosa Ratera had retained in her possession $175, pending correction of the alleged defects in the flooring. There is nothing to show that any part of this $175 was ever paid to the contractor.

Solé testified that the floor was not waterproof. The contractor testified that the work was done according to the plans and specifications, and that he had· consented to the retention of the $175 in order to avoid trouble and retain the good will of the property owner. Solé stated that the floor leaked when water was poured on it. He did not go into details as to the conditions of the test. Even if payment in full for the flooring had been shown, the acceptance by the trial judge of the contractor's statement as to the character of the work done and his explanation as to the retention of the $175 would not have amounted to reversible error.

The final contention of appellant is that the court erred in awarding costs to plaintiff.

There is some force in the argument that plaintiff failed to recover on his second and third causes of action. This is offset by other considerations. Plaintiff was forced to defend against a counterclaim which exceeded the amount specified in his first cause of action. That amount had been determined by two expert appraisers, one of them named by defendant. The district court found that the counterclaim was without merit. It was properly dismissed.

Plaintiff obtained a judgment for the full amount claimed

in his first cause of action. Aside from the question of costs and of counterclaim appellant does not question the correctness of that judgment.

Section 313 of our Code of Civil Procedure reads as follows:

"The defendant in any action may, at any time before the trial or judgment, serve upon the plaintiff an offer to allow judgment to be taken against him for the sum or property, or to the effect therein specified. If the plaintiff accepts the offer, and gives notice thereof within five days, he may file the offer, with proof of notice of acceptance, and the secretary must thereupon enter judgment accordingly. If the notice of acceptance be not given, the offer is to be deemed withdrawn, and can not be given in evidence on the trial; and if the plaintiff fails to obtain a more favorable judgment, he can not recover costs accruing subsequently to the offer, but must pay the defendant's cost from the time of the offer."

If the defendant had served plaintiff with timely notice of her willingness to accept a judgment for the amount claimed in the first cause of action and already found to be due plaintiff, there would have been no necessity for a trial and no question of costs, unless imposed upon plaintiff in the event of an unsuccessful attempt to recover on two or more of the three causes of action. Defendant did not see fit to avail herself of this opportunity.

The district court did not abuse its discretion in awarding costs to plaintiff.

The judgment appealed from must be affirmed.